Ryan Alexander, Esq.
Nevada Bar No. 10845
Law Offices of Ryan Alexander PLLC
520 S. 4th St., Ste. 340
Las Vegas, NV 89101
Phone: (702) 868-3311
Fax: (702) 868-3312
Email: ryan@ryanalexander.us
*Attorney for Debtors*

**Electronically Filed 6/9/2010**

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In Re:<br><br>LEONARDO CARBALLO AND ANGELA NUÑEZ,<br><br>DEBTORS. | Case No.: 10-12105-BAM<br>Hon. Bruce A. Markell<br>Chapter 11<br><br>**Hearing Date: July 9, 2010**<br>**Hearing Time: 9:00 a.m.** |

### DEBTORS' PLAN OF REORGANIZATION

This Plan of Reorganization (the "Plan") under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") proposes to pay creditors of **LEONARDO CARBALLO** and **ANGELA NUÑEZ**, the above-captioned Debtors and Debtors-in-Possession (the "Debtors") from the reorganization of their residential property and secured debt.

This plan provides classes of secured claims and unsecured claims. Unsecured creditors holding allowed claims will receive distributions which the Debtors have valued at approximately 6% of each creditor's allowed claim. This Plan also provides for the payment of administrative and priority claims in full on the effective date of this Plan, or as

agreed by the holder of such administrative or priority claim.

All creditors should refer to Articles II through IV of this Plan for information regarding the precise treatment of their claims.  A Disclosure Statement (the "Disclosure Statement") that provides more detailed information regarding this Plan and rights of creditors was circulated with this Plan.  Your rights may be affected.  You should read these papers carefully and discuss them with your attorney.  If you do not have an attorney, you may wish to consult one.

# ARTICLE I
# DEFINITIONS

Unless the context otherwise requires, the following capitalized terms shall have the meanings indicated when used in this Plan and the accompanying Disclosure Statement, which meaning shall be equally applicable to both the regular and plural forms of such terms.  Any term in this Plan that is not defined herein but that is used in the Title 11, United States Code (the "Code") shall have the meaning assigned to such term in the Code.

1.1    "**Administrative Claim**" shall mean those claims entitled to priority, under the provisions of Section 507 of the Code, pursuant to a claim and allowed administrative expense priority under Section 503(b) of the Code.

1.2    "**Allowed Administrative Claim**" means an Administrative claim that is an Allowed Claim.

1.3    "**Allowed Claim**" as to all classes, hereinafter specified, shall mean a claim against a Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date, or, with leave of the Court and without objection by any party-in-interest, late-filed and as to which neither the Debtor nor any party-in-interest files an objection or as to which the Claim is allowed by Final Order of the Court or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to agreed or certiorari proceeding and as to which no appeal or certiorari proceeding is pending  This category includes all claims deemed unsecured pursuant to Section 506(a) of the Code.  When "Allowed Claim" is used in the context of a Secured

Claim, the provisions of Section 506(b) of the Code shall also apply. This category includes all Claims deemed unsecured pursuant to Section 506(a) of the Code.  When "Allowed claim" is used the context of a Security Claim, the provisions of Section 506(b) of the Code shall also apply.

1.4     "**Allowed Interest**" means the Interest held by a shareholder of record of the Debtor as to which no objection to the allowance thereof has been interposed within the applicable period of limitations fixed in the Plan or the Confirmation Order, or as to which any such objection has been determined by an order .

1.5     "**Allowed Secured Claim**" shall mean an Allowed Claim secured by a lien, security interest or other encumbrance on the properties owned by the Debtor, which lien, security interests, or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby.  That portion of such Claim exceeding the value of the security held thereof shall be an Unsecured Claim as defined below and determined pursuant to 11 US.C. Section 506(a).

1.6     "**Allowed Tax Claim**" means a Tax Claim that is an Allowed Claim.

1.7     **"Allowed Unsecured Claim"** shall mean an Unsecured Claim against Debtor (a) for which a Proof of Claim has been timely filed with the Court by the Bar Date or, with leave of the court and without objection by any party-in-interest and as to which neither the Debtor nor any party-in-interest files no objection or as to which the Claim is allowed by Final Order of the Court, or (b) scheduled in the list of creditors, as may be amended, prepared and filed with the court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount as to which no objection to the allowance thereof has been interposed through closing of this case, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appearance or certiorari proceeding is pending.  This category includes all Claims deemed unsecured Pursuant to *Section 506(a) of the Code*.

1.7     "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure and any amendments thereof.

1.8     "**Bar Date**" shall mean the date fixed by the Court as the last date of filing all claims in this case, other than Administrative and priority claims or Rejection Claims.

1.9     **"Case"** shall mean this Chapter 11 case.

1.10    **"Claim"** shall mean any rights to payment from the Debtor as to the date of entry of the Order Confirming Plan whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal equitable, secured or unsecured or can be asserted by way of set-off Claim includes any right or cause of action based on a pre-petition monetary or non-monetary default, as defined in *Section 101(5) of the Code*.

3

1.11    **"Claimant"** shall mean the holder of a claim against the Debtor or the Estate.

1.12    **"Class"** shall refer to a category of holders of Claims or interests which are "substantially similar" as provided for in Section 1122 of the Code.

1.13    **"Code"** shall mean the United States Bankruptcy Code, being Title 11 of the United States Code, *11 U.S.C. Section 101 e*t *seq.*, and any amendments thereof.

1.14    "**Committee**" means the official committee of creditors holding unsecured claims appointed in the Case.

1.15    **"Confirmation"** or **"Confirmation of the Plan"** shall mean entry by the Court of an Order Confirming this Plan at or after a hearing pursuant to *Section 1129 of the Code*.

1.16    **"Confirmation Date"** shall mean the date on which the Court enters an Order confirming the Plan.

1.17    "**Consummation**" means completion of all distributions to be made under the Plan.

1.18    **"Court"** shall mean the United States Bankruptcy Court for the District of Nevada, Las Vegas Division, presiding over these Chapter 11 reorganization cases, or any necessary court of competent jurisdiction.

1.19    "**Convenience Claims**" means all Allowed Claims which are reducible by election or less or which amount to which reduced by the holders thereof in accordance with the terms of the plan, excluding Priority Claims.

1.20    **"Creditors"** means all entities with Claims against the Debtor or the Estate.

1.21    "**Debt**" shall mean any obligations of Debtor, alone, any obligation of Debtor and any other Person, to any Entity.

1.22    **"Debtors"** shall mean Leonardo Carballo and Angela Nuñez.

1.23    **"Disbursing Agent**" shall mean Debtors.

1.24    **"Disclosure Statement"** means the Debtor's Disclosure Statement as approved by order of the Court.

4

1.25    **"Disputed Claims"** means claims against the Debtor or the Estate as to which an objection has been filed after the Effective Date or such later date as may be fixed by the Court by the Debtor or the Reorganized Debtor and which objection has not been withdrawn or resolved by the entry of a Final Order.

1.26    "**Distributions**" means the property (including payments) required by the Plant o be provided to the holders of Allowed Claims.

1.27    **"Effective Date of the Plan"** The effective date of this Plan is the eleventh business day following the date of the entry of the confirmation order.  But if a stay of the confirmation order is in effect on that date, the effective date will the first business day after that date on which no stay of the confirmation order is in effect provided that the confirmation order has not been vacated.

1.28    "**Entity**" shall include persons, estate, trust, governmental unit and United States Trustee.

1.29    "**Estate**" means the bankruptcy estate created upon commencement of the Case pursuant to *Section 541(a) of the Code*.

1.30    "**Equity Interest Holders**" shall mean holders of the equity interests in the Debtors.

1.31    **"Final Confirmation"** shall mean that date which is eleven (11) days following the entry of the Order Confirming Plan, during which period of time no Notice of Appeal is filed, or if a Notice of Appeal is filed, during which period of time no Motion to Stay Pending Appeal is granted or supersedes bond is approved and filed.

1.32    "**Final Order**" means an order of the Court that has been entered and either

1.32.1    The time for appeal from such entered Order has expired with no appeal having been timely filed; or

1.32.2    Any appeal that had been timely filed and has been dismissed or otherwise finally determined.

1.33    "**Impaired**" shall have the meaning provided in Section 1124 of the Code.

1.34    **"Insider"** shall mean any officer, director, shareholder of the Debtor and any relative of the shareholders of the Debtor.

1.35    "**Interests**" means the equity security interests in the Debtor.

The Law Offices of Ryan Alexander, PLLC
520 S. 4th St., Ste. 340. Las Vegas, NV 89101

1.36    "**Lien**" has the meaning provided by Section 101(37) of the Code.

1.37    **"Order Confirming Plan"** shall mean the Order of the Court determining that this Plan meets the requirements of Chapter 11 of the Code and is entitled to confirmation or filed for relief *pursuant to Section 2219 of the Code*.

1.38    **"Petition Date**" shall mean the date on which the Debtor filed this proceeding, February 10, 2010.

1.39    **"Plan"** shall mean this Plan of Reorganization in its present form or as it may be amended, modified or supplemented.

1.40    **"Priority Claim"** shall mean any claim entitled to priority pursuant to *Section 507(a) of the Code*, except for Tax Claims and claims incurred by the Debtor post-petition in the ordinary course of business.

1.41    "**Property of the Estate**" has the meaning provided by *Section 541 of the Code*.

1.42    "**Pro Rata**" means proportionately so that the ratio of the amount of the distribution made on account of a particular Allowed claim to the Distributions made on account of all Allowed Claims of the Class in which the particular Allowed claim is included is the same as the ratio of the amount of such particular Allowed claim to the total amount of Allowed claims of the Class of which such particular Allowed Claim is included.

1.43    **"Rejection Claim"** shall mean any claim arising out of the rejection of a lease or executory contract pursuant to Section 363 of the code, which claim shall be treated as an Unsecured Claim.

1.44    **"Reorganized Debtor"** shall mean the entity which shall assume title to and control of the Debtor's assets and liabilities upon confirmation as provided herein.

1.45    **"Secured Claim"** shall mean an Allowed Claim secured by a lien, security interest or other encumbrance on the properties owned by the Debtor, which lien security interest or other encumbrance has been properly perfected as required by law, to the extent of the value of the property encumbered thereby. That portion of such Claim emceeing the value of the security held thereof shall be an Unsecured Claim, as defined below and determined pursuant to 11 U.S.C. Section 506(a).

1.46    **"Substantial Consumation"** shall occur upon Debtor's commencement of payments to creditors as provided in this Plan.

1.47    **"Tax Claims"** shall mean any claims entitled to priority under *Section 507(a)(8) of the Code* and shall include the claims of taxing authorities for taxes owed on the property retained by the Debtor under the Plan.

1.48    "**Unclaimed Property**" means any Distributions which are unclaimed following the date of distribution. Unclaimed Property shall include (a) checks (and the funds represented thereby) which have been return as undeliverable without a property forwarding address, (b) funds for checks which have not been paid, (c) checks (and the funds represented thereby) which were not mailed or delivered because of a proper address with which to mail or deliver such property, and (d) interest on cash constituting Unclaimed Property.

1.49    **"Unsecured Claim"** shall mean any Allowed Claim, whether or not liquidated or contingent other than a "Priority Claim, a Tax Claim, or a Secured Claim".

1.50    "**Wage Claim**" means a Claim entitled to priority treatment pursuant to *Section 507(a)(4) and/or (5) of the Code*.

## ARTICLE II
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEE FEES AND PRIORITY TAX CLAIMS

2.1    "**Unclassified claims**"    In accordance with Section 1123(a)(1) of the Bankruptcy Code, administrative expense claims, and priority tax claims are not in classes.

2.2    "**Administrative Expense Claims**"    Each holder of an administrative expense claim allowed under Section 503 of the Bankruptcy Code will be paid in full on the Effective Date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtors.

2.3    "**Priority Tax Claims**"    Each holder of a priority tax claim will be paid in full on the effective date of this Plan, or with respect to the Internal Revenue Service, as agreed upon among the parties.

2.4    "**United States Trustee Fees**"    All fees required to be paid by 28 U.S.C. Section 1930(a)(6) will accrue and be timely paid until the case is closed, dismissed or converted to another chapter of the code. Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

## ARTICLE III
## TREATMENT OF UNCLASSIFIED CLAIMS
## (CERTAIN ADMINISTATIVE CLAIMS AND PRIORITY CLAIMS)

3.1    All trade and service debtors and obligations, including 2010 and beyond *ad valorem* taxes, incurred in the normal course of business by the Debtors on or after the

7

Case 10-12105-bam    Doc 86    Entered 06/09/10 19:16:43    Page 8 of 20

Petition Date will be paid when due in the ordinary course of the Debtors' business unless a different time for payment is specified in this Plan.

3.2  Each governmental unit holding a post-petition Claim arising out of taxes assessed against property of the estate, also including "*ad valorem* property taxes," but limited as provided by Section 502(b)(3) of the Code, shall be paid in full when said claims are due.

3.3  The holders of Allowed Administrative Claims entitled to priority under Section 507(a)(2) of the Code, entities entitled to payments under Section 546(c) or 553 of the Code, and entities entitled to payment of administrative expenses pursuant to Sections 503 and 507(a) of the Code shall receive on account of such Allowed Claims or administrative expenses cash in the amount of such Allowed Claims or administrative expenses on or before the Effective Date of the Plan or as soon thereafter as is practicable. Notwithstanding the foregoing, professionals employed at the expense of the Estate, and any entities which may be entitled to an allowance of fees and expenses from the Estate pursuant to Sections 503(b)(2) through (9) of the Code, shall receive cash in the amount awarded to such professionals and entities as soon as practicable after an order is entered by the Court approving such award pursuant to Sections 330 or 503(b)(2) through (9) of the Code, unless any such professional or other entity consents prior to Confirmation to other treatment.

3.4  Holders of Allowed Tax Claims, if any, entitled to priority under Section 507(a)(8) of the Code will be paid on account of such Claims, in equal quarterly installments over a period not exceeding five years after the order for relief. Payment of Allowed Tax Claims shall include payment of interest at the rate applicable under non-bankruptcy law to such Claims. The Reorganized Debtor may elect, in its sole discretion, to prepay any such Claim without any penalty for prepayment.

## ARTICLE IV
## DIVISION OF CREDITORS INTO CLASSES

4.1  **Classification of Claims**:  This Classification of Claims is made for purposes of voting on this Plan, making distributions thereunder, and for ease of administration thereof. Unless specifically provided otherwise herein, on the Confirmation Date this Plan discharges and extinguishes all Claims and Debts against the Debtors of whatever character, whether allowed by the Court or otherwise.

4.2  **Class 1 (Priority Claim of IRS)**:  Class 1 consists of the Priority Claims against the Debtors.  The legal, equitable and contractual rights of the holders of allowed Class 1 claims have been paid by the Debtors prior to the effective date of this Plan or otherwise agree to different treatment.  Each holder of an allowed Class 1 claim shall receive, in full and final satisfaction of such allowed Class 1 claim, payment in full in cash on or as soon as reasonably practicable after (i) the effective date of the plan, (ii) the date such allowed Class 1 claim becomes allowed or (iii) such other date as may be ordered by the

8

Bankruptcy Court. Class 1 is an unimpaired Class, and is deemed to have accepted the Plan pursuant to Section 1126(f) the Bankruptcy Code. Therefore, the holders of Class 1 claims are not entitled to vote to accept or reject the Plan.

**Class 2 (Consists of Allowed Claims of the Taxing Authorities):** Class 2 consists of the Priority Claims against the Debtor. The legal, equitable and contractual rights of the holders of allowed Class 2 claims has been paid by the Debtors prior to the Effective Date of this Plan or otherwise agree to different treatment, each holder of an allowed Class 2 Claim shall receive, in full and final satisfaction of such allowed Class 2 claim, payment in full in cash on or as soon as reasonably practicable after (i) the effective date of the plan, (ii) the date such allowed Class 2 claim becomes allowed or (iii) such other date as may be ordered by the Bankruptcy Court. Class 2 is an unimpaired Class, and is deemed to have accepted the Plan pursuant to Section 1126(f) the Bankruptcy Code. Therefore, the holders of Class 2 claims are not entitled to vote to accept or reject the Plan

**Class 3 (Consists of the Allowed Secured Claims)**: Class 3 consists of the Allowed Secured Claims in Debtors' Plan and will be treated pursuant to 11 U.S.C. Section 506(a) and Section 1322 and BR 3012 and 9014 as enumerated in Article VII.

**Class 4 (Consists of Allowed Assumed Executory Contracts and Unexpired Leases):** Class 4 consists of the Allowed Assumed Executory Contracts and Unexpired Leases and are not impaired.

**Class 5 (Consists of Convenience Claims):** Class 5 consists of convenience claims in an amount under $1,000.00 each and against the Debtors in accordance with Section 1122(b) of the Bankruptcy Code. The legal, equitable and contractual rights of the holders of allowed Class 5 Claims are unaltered. Except to the extent that a holder of an allowed Class 5 claim has been paid by the Debtors prior to the Effective Date of this Plan or otherwise agree to different treatment, each holder of an allowed class 5 claim shall receive, in full and final satisfaction of such allowed Class 5 claim, payment in full in cash on or as soon as reasonably practicable after (i) the effective date of the Plan (ii) the date such allowed Class 5 claim becomes allowed or (iii) such other date as may be ordered by the Bankruptcy Court. Class 5 is not impaired and the holders of Class 5 claims are conclusively deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy code. Therefore, the holders of Class 5 claims are not entitled to vote or accept or reject the Plan.

**Class 6 – (Consists of General Unsecured Claims).** Class 6 consists of General Unsecured Claims against the Debtors, which include the unsecured portion of Debtors' first and second lienholders' claims. Holders of allowed General Unsecured Claims shall receive, in full and final satisfaction of such allowed Class 6 claims, their pro rata share of the Debtors' monthly plan payments which the Debtors estimate to be 6% of such creditors' claim. Class 6 is an impaired class and holders of class 6 claims are entitled to vote to accept or reject the Plan.

# ARTICLE V
# CLASSES (NONVOTING) NOT IMPAIRED UNDER THE PLAN

Classes 1, 2, 4 and 5 are not impaired under the Plan and shall be treated as follows:

6.1    Class 1 Claimants Consist of Allowed Claim of the IRS.

6.2    Class 2 Claimants Consist of Allowed Claims of the Taxing Authorities other than the IRS.

6.3    Class 4 Claimants Consist of Allowed Assumed Lease Claims.

6.4    Class 5 Claimants Consist of Allowed Convenience Claims.

Pursuant to Section 1126(f) of the Code, each holder of a claim in the above unimpaired Classes is conclusively presumed to have accepted the Plan, and solicitation of acceptances with respect to members of such Classes is not required.

# ARTICLE VI
# TREATMENT OF (VOTING) CLASSES IMPAIRED UNDER THE PLAN

Classes 3 and 6 are Impaired under the Plan and shall be treated in accordance with the terms stated below. The Debtor will solicit acceptances of the Plan from each Impaired Class. The Impaired Classes will be treated as follows:

7.1    **Satisfaction of Claims and Debts**:  The treatment of and consideration to be received by holders of Allowed Claims or interests pursuant to this Article VII of this Plan shall be in full settlement, release and discharge of their respective claims, debts, or interests as against the Debtors subject to the provisions herein.  On the Confirmation Date, the Reorganized Debtors shall assume all duties, responsibilities and obligations for the implementation of this Plan.  Any class of Claimants failing to vote on this Plan shall be deemed to have accepted this Plan in its present form or modified or amended as permitted herein.

7.2    **Class 3 Claimants Consist of Allowed Secured Claims other than the IRS**. The Allowed Secured Claims in Debtors' Plan will be treated pursuant to 11 U.S.C. Section 506(a) and Section 1322 and BR 3012 and 9014 as set forth in Debtors' Schedule D of their Voluntary Petition as follows (organized here by real properties) and summarized as Debtors' List of Real Properties incorporated herein and attached hereto as Exhibit "A":

A.    **Secured Claim for Primary Residence located at 10400 Mountain Lodge Place, Las Vegas, NV 89144**

  i.    **Class 3(a) Secured Claim of First Mortgage Bank of America ("BAC"), First**

**Mortgage**: Debtors owe a total of $326,902.00 to their first mortgage holder, Bank of America, f/k/a Countrywide Home Lending ("BAC") on their Primary Residence and will continue to make post-petition mortgage payments under their original mortgage note direct to BAC in the amount of $1,845.00 per month. The holder of this allowed Class 3(a) Secured Claim shall be unimpaired and shall be paid in full in accordance with the terms of its related note and mortgage. Voting on Class 3(a) is an unimpaired class and the holder of the Class 3(a) claim is conclusively deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code. Therefore, the holder of the Class 3(a) claim is not entitled to vote to accept or reject the Plan.

ii. **Class 3(b) Secured Claim of BAC, Second Mortgage**: Debtors' second lien holder for their Primary Residence referenced above is Bank of America, f/k/a/ Countrywide Home Lending ("BAC"). Debtors owe a total of $56,998.00 for their second lien mortgage. The holder of the allowed Class 3(b) Secured Claim shall be impaired and shall be revalued on the effective date of this Plan, pursuant to Sections 1123 and 506 of the Bankruptcy Code. Any amount of a Class 3(b) claim that is deemed to be unsecured shall be afforded the treatment as set forth in Class 6 above. Voting on Class 3(b) is an impaired class, and the holder of the Class 3(b) claim is entitled to vote to accept or reject the Plan.

B. **Debtors' Investment Property located at: 4132 Knoll Ridge Avenue, North Las Vegas, NV 89032**

i. **Class 3(c) Secured Claim of Americas Servicing Co. for First Lien Mortgage**: Debtors owe a total of $225,600.00 to their first mortgage holder, Americas Servicing Co. ("Americas") on this investment property. The value of this investment property on the date of filing was $108,000.00. Debtors are paid $1,100.00 rental income per month for this investment property. The holder of the allowed Class 3(c) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on Exhibit B attached hereto in accordance with the terms of its related note and mortgage. The Class 3(c) Secured Claim shall be revalued on the effective date of this Plan, pursuant to Sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on Exhibit B of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective of the plan.

ii. **Class 3(d) Secured Claim of Select Portfolio Servicing Co. for Second Mortgage**: Debtors' second lien holder for their investment property located at 4132 Knoll Ridge Avenue, Las Vegas, NV 89032 is held by Select Portfolio Servicing. Debtors owe a total of $41,737.00 for their second lien mortgage. The holder of the allowed Class 3(d) Secured Claim shall be impaired and shall be revalued on the effective date of this Plan, pursuant to Sections 1123 and 506 of the Bankruptcy Code. Any amount of a Class 3(d) claim that is deemed to be unsecured shall be afforded the treatment as set forth in Class 6 above.

C. **Debtors' Investment Property located at: 10039 Emerald Creek Drive, Houston, TX 77032 (Duplex Property)**

  i. **Class 3(e) Secured Claim of BAC for First Lien Mortgage:** Debtors owe a total of $107,623.00 to their first mortgage holder, BAC f/k/a countrywide Home Lending on this investment property. The value of this investment property on the date of filing was $118,000.00. Debtors enjoy an equity cushion of approximately $11,000.00. The holder of this allowed Class 3(e) Secured Claim shall be unimpaired and paid in full in accordance with the terms of its related note and mortgage. Voting on Class 3(e) is an unimpaired class and the holder of the Class 3(e) claim is conclusively deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code. Therefore, the holder of the Class 3(e) claim is not entitled to vote to accept or reject the Plan.

D. **Debtors' Investment Property located at: 3408 Thomas Avenue, 4-Plex Property, North Las Vegas, NV 89030**

  i. **Class 3(f) Secured Claim of BAC for First Lien Mortgage:** Debtors owe a total of 191,250.00 to their first mortgage holder, Bank of America, f/k/a Countrywide Home Lending ("BAC") on this investment property. The value of this investment property on the date of filing was $81,990.00. Debtors are paid $1,990.00 rental income per month for this investment property. The holder of the allowed Class 3(f) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on Exhibit B attached hereto in accordance with the terms of its related note and mortgage. The Class 3(f) secured Claim shall be revalued on the effective date of this Plan, pursuant to Sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on Exhibit B of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective of the plan.

  ii. **Class 3(g) Secured Claim of GMAC for Second Lien Mortgage:** Debtors' second lien holder for their investment property located at 3408 Thomas Avenue, Las Vegas, NV 89030 is held by GMAC Mortgage. Debtors owe a total of $38,412.00 for their second lien mortgage. The holder of the allowed Class 3(g) Secured Claim shall be impaired and shall be revalued on the effective date of this Plan, pursuant to Sections 1123 and 506 of the Bankruptcy Code. Any amount of a Class 3(g) claim that is deemed to be unsecured shall be afforded the treatment as set forth in Class 6 above.

E. **Debtors' Investment Property located at: 3126 Alfa Romero Avenue, North Las Vegas, NV 89031**

  i. **Class 3(h) Secured Claim of BAC for First Lien Mortgage:** Debtors owe a total of $174,750.00 to their first mortgage holder, Bank of America, f/k/a

Countrywide Home Lending ("BAC") on this investment property. The value of this investment property on the date of filing was $105,000.00. Under the current monthly lease agreement, Debtors are paid $1,100.00 per month for this investment property. The holder of the allowed Class 3(h) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on Exhibit B attached hereto in accordance with the terms of its related note and mortgage. The Class 3(h) Secured Claim shall be revalued on the effective date of this Plan, pursuant to Sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on Exhibit B of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective of the plan.

  ii. **Class 3(i) Secured Claim of GMAC for Second Lien Mortgage:** Debtors' second lien holder for their investment property located at 3126 Alfa Romero Avenue, Las Vegas, NV 89031 is held by GMAC Mortgage. Debtors owe a total of $35,088.00 for their second lien mortgage. The holder of the allowed Class 3(i) Secured Claim shall be impaired and shall be revalued on the effective date of this Plan, pursuant to Sections 1123 and 506 of the Bankruptcy Code. Any amount of a Class 3(i) claim that is deemed to be unsecured shall be afforded the treatment as set forth in Class 6 above.

F. **Debtors' Investment Property located at 2236 Opponents Ridge Street, North Las Vegas, NV 89032**

  i. **Class 3(j) Secured Claim of BAC for First Lien Mortgage:** Debtors owe a total of $169,500.00 to their first mortgage holder, Bank of America, f/k/a Countrywide Home Lending ("BAC") on this investment property. The value of this investment property on the date of filing was $70,000.00. Under the current monthly lease agreement, Debtors are paid $1,100.00 per month for this investment property. The holder of the allowed Class 3(j) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on Exhibit B attached hereto in accordance with the terms of its related note and mortgage.

  The Class 3(j) Secured Claim shall be revalued on the effective date of this Plan, pursuant to Sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on Exhibit B of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective of the plan.

G. **Debtors' Investment Property located at: 4309 Ranch Foreman Road, North Las Vegas, NV 89032**

  i. **Class 3(k) Secured Claim of EMC Mortgage for First Lien Mortgage:** Debtors owe a total of $107,832.00 to their first mortgage holder, EMC Mortgage on this investment property. The value of this investment property on the date of filing was $92,000.00. Under the current monthly lease agreement, Debtors are

receiving $1,100.00 per month for this investment property**.** The holder of the allowed Class 3(k) Secured Claim shall be impaired and paid the allowed amount of its claim as set forth on Exhibit B attached hereto in accordance with the terms of its related note and mortgage. The Class 3(k) Secured Claim shall be revalued on the effective date of this Plan, pursuant to Sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on Exhibit B of the Plan. The confirmation order approving the Plan shall set forth the values of each secured creditors first lien claim as of the effective of the plan.

    ii. **Class 3(l) Secured Claim of BAC for Second Lien** Debtors' second lien holder for their investment property located at 4309 Ranch Foreman Road, Las Vegas, NV 89032 is held by Bank of America, f/k/a Countrywide Home Lending ("BAC"). Debtors owe a total of $96,499.00 for their second lien mortgage. The holder of the Allowed Class 3(l) Secured Claim shall be impaired and shall be revalued on the effective date of this Plan, pursuant to Sections 1123 and 506 of the Bankruptcy Code. Any amount of a Class 3(l) claim that is deemed to be unsecured shall be afforded the treatment as set forth in Class 6 above.

7.3    **Cramdown**. In the event that any Impaired Class entitled to vote on the Plan shall fail to accept the Plan in accordance with Section 1129(a) of the Code, the Debtor shall request that the Court confirm the Plan in accordance with Section 1129(b) of the Code.

### ARTICLE VII
### MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

8.1    **Source of Payments**. Payments and distributions under the Plan will be funded by the Debtors, based upon their (a) projected monthly rental income and (b) personal income. The Cash Flow Analysis attached hereto as Exhibit 3, outlines the Debtors' sources and uses of income. The Debtors' monthly Plan payment shall be $1,000.00 per month.

    (a)    **Rental Income**. Debtors currently receive $7,780.00 in rental income per month from their six (6) investment residential properties of which $1,000.00 will be paid into the Plan on a monthly basis.

    (b)    **Post-Petition Earnings from Future Income**. Debtors currently require the use of their post-petition earnings to maintain their household.

8.2    **Method of Plan Payments**:

    (a)    **Disbursements**. The Reorganized Debtors shall act as Disbursing Agents and shall make all Distributions in accordance with the Plan. In order to make the Distributions due under the Plan, the Reorganized Debtors, as Disbursing Agents, shall distribute all property and payments called for by the Plan. Except as otherwise provided

14

in the Plan, upon the first full month after the entry of the order confirming the Plan, the Debtors shall begin making monthly distributions under the Plan.  Debtors as the Disbursing Agents shall begin, as soon as practical, making pro-rata payments to the Debtors' unsecured creditors holding allowed claims, on a quarterly basis, until such claims are paid as set forth in the Plan.

(b) Except as otherwise provided in the Plan, or upon the entry of a final non-appealable order of the Bankruptcy Court, or as agreed to by the relevant parties, distributions under the Plan on account of a disputed claim that becomes an allowed claim after the effective date of the Plan shall begin on the regular quarterly payment date, as established by the Disbursement Agents, which is at least thirty (30) days after such claim becomes an allowed claim.

(c) Notwithstanding anything in the Plan to the contrary, and except as otherwise agreed to by the relevant parties, no partial payments and no partial distributions shall be made with respect to a disputed claim until all such disputes in connection with such disputed claim have been resolved by settlement among the parties or a final order of the Bankruptcy Court.  In the event that there are disputed claims requiring adjudication and resolution, the Disbursement Agents shall establish appropriate reserves for potential payment of such Claims.

(d) If any holders of allowed claims against the Debtors' estate fail to receive payment in accordance with the Plan, the Bankruptcy Court shall retain jurisdiction to hear and determine all matters related to the implementation of this Plan and the payments required thereunder.

(e) **Post-Confirmation Management**.   The Debtors will manage their properties post-petition in the ordinary course.  They will be authorized to enter into, terminate and renew lease agreements as they see fit.  Such activities will include retaining management companies to aid in the renting of their properties, drafting and serving eviction notices, negotiating loan modifications or refinancing their properties, repairing the properties and maintaining a reserve account of up to one month's mortgage payments or $10,000.00, whichever is greater.

15

# ARTICLE VIII
# GENERAL PROVISIONS

9.1    **Definitions and Rules of Construction**.  The definitions and rules of construction as set forth in Sections 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan.

9.2    **Modification of Plan**.

The Debtors may modify the Plan at any time before confirmation of the Plan. The Court, however, may require a new Disclosure Statement and/or re-voting on the Plan.  The Debtors may also seek to modify the Plan at any time after confirmation only if (a) the Plan has not been substantially consummated and (b) the Court authorizes the proposed modifications after notice and a hearing.

Upon request of the Debtors, the Plan may be modified at any time after confirmation of the Plan, but before the completion of payments under the Plan to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take on accounting of any payment of a claim made other than under the Plan.

Effective as of the date hereof and subject to the limitations and rights contained in the Plan: (a) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the confirmation order; and (b) after the entry of the confirmation order, the Debtors may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with Section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan; provided, however, that any modification to the Plan shall not affect the rights or treatment of holders of unsecured claims.

9.3    **Final Decree**.  Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtors, or such other party as the Court shall designate in the Plan confirmation order, shall file a motion with the Court to obtain a final decree to close the case.  Alternatively, the Court may enter such a final decree on its own motion.

9.4    **Vesting of Assets in the Reorganized Debtor**.  After confirmation of the Plan, all properties of the Debtors shall vest in the Reorganized Debtors, free and clear of all liens, claims, charges or other encumbrances, except those enumerated in Section 9.5, the order approving the motion to value and the confirmation order.  The Reorganized Debtors may operate their business and may use, acquire or dispose of property and compromise or settle any claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the confirmation order.

Without limiting the foregoing, the Debtors shall pay the charges that incur after confirmation for professionals' fees, disbursements, expenses or related support services (including reasonable fees relating to the preparation of professional fee applications) without application to the Bankruptcy Court.

9.5    **Release of Liens, Claims and Equity Interests**.  Except as otherwise provided herein or in the following sentence or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, upon confirmation, all liens, claims, mortgages, deeds of trust, or other security interests against the properties of the Debtors' estate shall be fully released and discharged.  The existing liens and lien rights of those lenders holding claims in Class 3 are expressly preserved under the Plan, and their existing liens shall ride through and remain attached to any and all underlying collateral in any transfer of property expressly set forth in, or contemplated by, the Plan. To the extent any provision in this Plan or the confirmation order can be or contradict the express preservation of lien rights in this provision, this provision controls.

9.6    **Effectuating Documents; Further Transactions**.   The Debtors may take all actions to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of this Plan.

9.7    **Exemption from Certain Transfer Taxes**.  Pursuant to Section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the confirmation order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

9.8    **Revocation of Plan**.   The Debtors reserve the right to revoke or withdraw the Plan prior to the confirmation hearing and to file subsequent Chapter 11 plans.  If the Debtors revoke or withdraw the Plan or if confirmation does not occur, then:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Court; and (3) nothing contained in the Plan shall  (a) constitute a waiver or release of any claims by or against, the Debtors or any other entity; (b) prejudice in any manner the rights of the Debtors over any other entity; or (c) constitute an admission acknowledgement, offer or undertaking of any sort by the Debtors or any other entity.

9.9    **Successor and Assigns**.  The rights, benefits and obligations of any entity named or referred to herein shall be binding on, and share inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

9.10    **Reservation of Rights**: Except as expressly set forth herein, the Plan shall have no force or effect until the Court enters the confirmation order.  Neither the filing of the Plan, any statement or provision contained in the Disclosure Statement, nor the taking of any action by a Debtor or any other entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of:  (1) any Debtor with respect to the holders of claims or other entity; or (2) any holder of a claim or other entity prior to the effective date of the Plan.

9.11    **Further Assurances**. The Debtors or the Reorganized Debtors, as applicable, all holders of Claims receiving distributions under the Plan and all other entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the plan or the confirmation order.

9.12    **Severability**.  If, prior to confirmation of the Plan, any term or provision of the Plan is held by the Court to be invalid, void or unenforceable, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted, provided that any such alteration or interpretation must be in form and substance reasonably acceptable to the Debtors, and, to the extent such alteration or interpretation affects the rights or treatment of holders of unsecured claims, such claim holder.

9.13    **Return of Security Deposits**.  Unless the Debtors agree otherwise in a written agreement or stipulation approved by the Court, all security deposits provided by the Debtors to any person or entity at any time after the petition date shall be returned to the Debtors within twenty (20) days after the date of confirmation without deduction or offset of any kind.

9.14    **Filing of Additional Documents**.  On or before the effective date, the Debtors may file with the Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence their terms and conditions hereof.

9.15.   **Captions**.  The hearings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

## ARTICLE IX
### PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND DISPOSITON OF REAL PROPERTY DISCHARGE

10.0    **Assumed Executory Contracts and Unexpired Leases**.

(a) The Debtors shall assume, on the effective date of this Plan the executor contracts and unexpired leases listed on Exhibit C attached hereto.  Exhibit C also shows the Debtors' estimated cure amounts if any, necessary to assume such contract in

accordance with Section 365 of the Bankruptcy Code.

(b) The Debtors will be conclusively deemed to have rejected all Executory Contracts and or Unexpired Leases not expressly assumed under Section 10.0(a) above. A proof of a claim arising from the rejection of an Executory Contract or Unexpired Lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

(c) The confirmation order shall constitute an order of the Bankruptcy Court approving such assumptions pursuant to Sections 365 and 1123 of the Bankruptcy Codes of the effective date of this Plan. The Debtors reserve the right to amend Exhibit C at any time before the effective date.

(d) Any objection by a party to an Executory Contract or Unexpired Lease to the Debtors' proposed assumption or any related cure amount set forth on Exhibit C must be filed, served and actually received by the Debtors at least seven (7) days prior to the confirmation hearing of this Plan. Any party to an Executory Contract or Unexpired Lease that fails to object timely to the proposed cure amount will be deemed to have consented to such assignment of its Executory Contract or Unexpired Lease. The confirmation order shall constitute an order of the Bankruptcy Court approving any proposed assignments of Executory Contracts or Unexpired Leases pursuant to Sections 365 and 1123 of the Bankruptcy Code as of the effective date.

(e) In the event of a dispute regarding (i) the amount of any cure payment (ii) the ability of the Debtors to provide "adequate assurance of future performance" (within the meaning of Section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assigned or (iii) any other matter pertaining to assignment, the applicable cure payments required by Section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a final order or orders resolving the dispute and approving the assumption. If an objection on a cure amount is sustained by the Bankruptcy Court, the Debtors at their sole option, may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming and assigning it.

(f) Disposition of Real Property. Pursuant to Sections 363 and 554 of the Bankruptcy Code, the Debtors may either sell or abandon any of their properties, subject to approval of the Bankruptcy Court in accordance with the confirmation hearing. Therefore, the order confirming the Plan will constitute the Bankruptcy Court's finding and determination that if the Debtors determine to sell or abandon any of their properties, that such sale or abandonment is (1) in the best interests of the Debtors, their estate and parties in interest, (2) fair, equitable and reasonable, (3) made in good faith and (4) approved pursuant to either Sections 363 or 554 of the Bankruptcy Code and Bankruptcy Rule 9019.

# ARTICLE X
# DISCHARGE

The Debtors are not discharged from any debt excepted from discharge under Section 523 of the Code. Further, confirmation of the Plan does not discharge the Debtors for any debts provided for in the Plan until the Debtors complete all payments under the Plan and the Court grants a discharge. The Debtors reserve the right, after notice and a hearing, to seek a discharge from the Court if the Debtors have not completed all payments under the Plan, provided the Debtors can demonstrate to the Court that the value, as of the effective date of the Plan, of the property actually distributed on account of each unsecured claim is not less than such creditor would receive if the Debtors had been liquidated under Chapter 7, modification of the Plan under Section 1127 of the Code is not practicable and the Debtors otherwise satisfy the requirements of Section 1141(d)(5) of the Code.

12.2 **Judgments Obtained on Discharged Debts are Void**. Pursuant to Section 524(a)(1) of the Code, the Debtor's discharge pursuant to confirmation of the Plan under Section 1141 of the Code, voids any judgments at any time obtained, to the extent that such judgment is a determination of the personal liability of the Debtors with respect to any debt discharged, whether or not discharge of such debt is waived.

12.3 **Discharge Injunction**. Pursuant to Section 524 of the Code, the Debtors' discharge pursuant to the Plan under Section 1141 of the Code operates as an injunction against the commencement or a continuation of an action, the employment of process, or an act, to collect, recover, or offset any discharged debt as a personal liability of the Debtors, whether or not discharge of such debt is waived.

DATED this 25th day of May, 2010

        Respectfully submitted,
        /s/ Ryan Alexander
        Nevada Bar No. 10845
        THE LAW OFFICES OF RYAN ALEXANDER, PLLC
        520 S. 4th Street, Suite 340
        Las Vegas, NV  89101
        Phone:  (702) 868-3311
        Fax:  (702) 868-3312
        Email: Ryan@RyanAlexander.us